George V. Utlik
ARENT FOX LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
george.utlik@arentfox.com

Aram Ordubegian
(admitted *pro hac vice*)
Andy S. Kong
(admitted *pro hac vice*)
ARENT FOX LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: (213) 629-7400
Facsimile: (213) 629-7401
aram.ordubegian@arentfox.com
andy.kong@arentfox.com

*Attorneys for Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | |
|---|---|
| In re: | : |
| | : |
| AIRFASTTICKETS, INC., | : |
|        Debtor and | : |
|        Debtor-In- | : |
|        Possession. | : |

-------------------------------------

| | | |
|---|---|---|
| AIRFASTTICKETS, INC., | : | Chapter 11 |
|        Plaintiff, | : | |
| | : | Case No. 15-11951 (SHL) |
|        v. | : | |
| | : | Adv No. _____ |
| CITIBANK, N.A., a federally chartered national | : | |
| banking association and wholly-owned | : | |
| subsidiary of Citigroup, Inc., a Delaware | : | |
| corporation, and NIKOLOAS KOKLONIS, an | : | |
| individual. | : | |
|        Defendants. | : | |

-------------------------------------------------------x

AFDOCS/13004788.1

## ADVERSARY PROCEEDING

The above-captioned debtor and debtor-in-possession, AirFastTickets, Inc., a Delaware corporation, and the plaintiff herein (the "**Debtor**" or "**Plaintiff**"), by and through its counsel, respectfully represents and alleges against Citibank, N.A., a federally chartered national banking association and wholly-owned subsidiary of Citigroup, Inc., a Delaware corporation ("**Citibank**"), and Nikoloas Koklonis, an individual ("**Koklonis**") (collectively, the "**Defendants**"), as follows:

## NATURE OF THE ACTION

1.      On or about February 2013, Koklonis transferred Debtor's monies to his own personal account, which he then used as collateral against a letter of credit ("**Letter of Credit**") that was issued by Citibank. Plaintiff believes that the Letter of Credit has matured, and as such, Koklonis has been actively demanding Citibank to release certain funds held as collateral to him personally, which Plaintiff believes to be at least $35,000 but upwards of $200,000 or more, including but not limited to, certificate(s) of deposit and other monetary and non-monetary assets of the Debtor that were also used as collateral (collectively, the "**Property**").

2.      The Property constitutes property of the Debtor's bankruptcy estate, and as such, should not be released or transferred to Koklonis. Nevertheless, despite having been expressly informed that the Property constituted property of the Debtor's estate, on or about March 7, 2016, the Plaintiff was informed that Citibank transferred some (or all) of the Property to Koklonis's personal account. Citibank has informed the Debtor that it has temporarily frozen Koklonis's account but may release the Property to Koklonis if an appropriate judicial proceeding was not commenced immediately.

///

2

3.       Accordingly, Plaintiff believes it is imperative to immediately enjoin Citibank from releasing or transferring the Property to Koklonis, and also, enjoin Koklonis from drawing down on the Property prior to this Court's adjudication as to the Debtor's rights to the Property.

4.       By and through this action (the "**Complaint**"), the Debtor seeks (a) an injunctive relief against the Defendants to enjoin them from transferring, withdrawing, or exercising control over the Property; (b) for turnover and accounting of the Letter of Credit and the Property, (c) for declaratory relief regarding Debtor's interests in the Letter of Credit and the Property, and (d) any such other and further relief as the Court deems necessary and proper.

## JURISDICTION, VENUE AND STATUTORY PREDICATES

1.       This adversary proceeding arises in and relates to the above-entitled chapter 11 case *In re AirFastTickets, Inc.,* which is now pending before the United States Bankruptcy Court for the Southern District of New York, Case No. 15-11951 (SHL).  The Debtor remains the debtor-in-possession of its Chapter 11 bankruptcy estate (the "**Estate**").

2.       On July 27, 2015, an involuntary petition (the "**Involuntary Petition**") under chapter 7 of title 11 of the United States Code was filed against the Debtor.  On October 27, 2015 (the "**Conversion Date**"), the Bankruptcy Court entered an order converting the Debtor's case to chapter 11 of the Bankruptcy Code, which included an order for relief.

3.       The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

4.       Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5.       This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court can and should enter a final judgment.  To the extent that this proceeding is a non-core proceeding or that, absent the consent of the parties, this Court does not have the power to enter final orders or judgment, the Debtor consents to entry of final orders or judgment by this Court.

AFDOCS/13004788.1

## THE PARTIES

6.    Plaintiff is the debtor and debtor-in-possession in the above-entitled bankruptcy case.

7.    Plaintiff alleges on information and belief that defendant Citibank, N.A. is a federally chartered national banking association headquartered in New York, New York and a wholly-owned subsidiary of Citigroup, Inc., which is a Delaware corporation that is also headquartered in New York, New York with its principal place of business at 701 East 60th Street North, Sioux Falls, SD 57117, but also conducts business in this district at 388 Greenwich Street, New York, New York 10013.

8.    Plaintiff alleges on information and belief that defendant Nikoloas Koklonis is an individual, who served as Debtor's former director, officer and controlling stockholder, and now resides or conducts his business at Easystarter Private Capital Company, located at Andrea Syngrou Avenue 194, 17671, Kallithea, Athens, Greece. Koklonis has consented to the jurisdiction of this Court by filing a proof of claim on December 1, 2015 (Docket No. 78). Furthermore, specific personal jurisdiction exists over Koklonis because he "purposefully directed his activities at residents of the forum," and the underlying cause of action "arose out of or relates to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *In re Bernard L. Madoff Investment Securities LLC*, 418 B.R. 75, 79-80, 52 (Bankr. S.D. N.Y. 2009). Lastly, Koklonis has established minimum contacts with the forum state by engaging in conduct that resulted in Citibank transferring the Property to his personal account.

///

///

///

///

///

4

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

### The Chapter 7 Case and Conversion to Chapter 11

9.      On July 27, 2015, certain petitioning creditors (the "**Petitioning Creditors**") filed an involuntary petition against the Debtor seeking an order for relief under chapter 7 of the Bankruptcy Code.

10.      On September 21, 2015, the Debtor filed an answer, consenting to the entry of an order for relief under the Bankruptcy Code along with a Motion to Convert Chapter 7 Case to Chapter 11 Pursuant to 11 U.S.C. § 706(a)(the "**Motion to Convert**").  The Court entered an order on October 28, 2015 granting the Motion to Convert, which included an order for relief.

### Events Preceding the Filing of the Bankruptcy Case

11.      The Debtor was founded in 2011 by Koklonis, who served as the Debtor's sole director, sole officer and controlling stockholder from its formation until approximately December 2014.   Leading up to June 2014, the Debtor and its subsidiaries ceased remitting payment for its ticket sales to the airlines.  In June 2014, the International Air Transport Association (the "**IATA**") revoked the Debtor's license, which put the Debtor and subsidiaries out of business.

### The Alleged Fraud

12.      By June 2015, the Debtor's board of directors ("**Board of Directors**"), managers and restructuring legal and financial advisors met to discuss alternatives to help the Debtor recover from its severe insolvency, including a possible restructuring or bankruptcy. While those discussions were underway a game changing event occurred: on June 4, 2015, the Debtor's Chief

5

Technology Officer/Head of IT informed Mr. Chen that Koklonis had been perpetrating a massive fraud on the investors and provided documentation as evidence of that fraud.

13.    The alleged fraud is that Koklonis allegedly created fake receivables, contacts and communications to trick investors into loaning the Debtor money and thwart an investigation, and then created at least one fake vendor to siphon the money that the Debtor received from investors out of the Debtor and into his own pocket.

14.    On June 6, 2015, after discovering the alleged fraud, the other two directors of the Debtor (Mr. and Mrs. Chen) gave notice of an emergency special meeting of the Board of Directors to be held on June 7, 2015. That same day, Koklonis purported to terminate Mr. Chen as Chief Executive Officer, remove Mr. Chen and Ms. Chen as directors, terminate several professionals retained by the Debtor and cancel the emergency meeting.

15.    Notwithstanding Koklonis's efforts, the June 7 meeting went forward. At that meeting, among other decisions, the Board of Directors approved emergency resolutions (a) to the extent Koklonis was the Debtor's CEO, to immediately remove him from his offices at the Debtor for cause, and (b) to appoint Mr. Adam Meislik, a Senior Managing Director at GlassRatner and Co-President and Chief Compliance Officer at GlassRatner Securities, LLC, as the Debtor's Chief Restructuring Officer, which would place him in charge of the Debtor's operations and authorize him to take all actions necessary to protect creditors and the Debtor's assets (if any). Mr. Meislik did not attend the special meeting and did not accept his appointment in light of the competing governance efforts.

16.    The Chens also filed suit in Los Angeles to appoint a Receiver. The case was dismissed for lack of proper venue. Nonetheless, the Chens sought to insulate the Debtor from further fraud through their governance efforts.

6

## Appointment of Receiver and Chancery Court Actions

17.     Koklonis attempted to regain control of the Debtor by filing a complaint in the Delaware Court of Chancery ("**Chancery Court**"), seeking a judicial determination that he was the sole director, Chairman of the Board of Directors, Chief Executive Officer, President and majority stockholder of the Debtor (the "**225 Action**"). In connection with the 225 Action, Koklonis filed a motion to maintain the status quo of the Debtor pending resolution by the Chancery Court of the underlying action.

18.     The Chancery Court appointed Mr. Meislik as receiver of the Debtor and gave him all powers of the Debtor's Board and Officers and made him the sole person authorized to act on behalf of the Debtor.

## Unauthorized Transfer of Estate Property to Koklonis

19.     Around February of 2013, Plaintiff believes that Koklonis requested Citibank to issue a Letter of Credit on the Debtor's behalf and name British Airways PLC as the intended beneficiary.

20.     On February 26, 2013, Samira Abid ("**Samira**"), second vice president and banking advisor with Citibank, sent an email to Koklonis informing him that in order for Citibank to issue a Letter of Credit, Koklonis would need to pledge a certificate of deposit as collateral for the Letter of Credit.  See email between Samira and Koklonis dated February 26, 2013, attached hereto as **Exhibit 1**.

21.     Samira suggested to Koklonis that the certificate of deposit would need to be established by using Koklonis's personal funds and not that of the Debtor.  See **Exhibit 1**.

22.     However, Samira then asked Koklonis "[c]an I move $35,000 from [Debtor's account] and use it to open the [certificate of deposit] in your personal account." See **Exhibit 1**.

23.     In order to have Citibank issue the Letter of Credit, Koklonis withdrew $35,000 from Debtor's checking account at Citibank ending in 6896 (the "**Checking Account**") to his personal account to be used as collateral for the Letter of Credit. Set forth in **Exhibit 2** attached hereto is the bank account statement demonstrating the $35,000 withdrawal. Said differently, Koklonis transferred the Property to his personal account in exchange for the Letter of Credit.

24.     On March 14, 2013, per Koklonis's directions, Citibank issued a Letter of Credit in the amount of $35,000. Set forth in **Exhibit 3** attached hereto is a copy of the Letter of Credit.

25.     On December 11, 2015, Debtor's counsel informed Citibank that the $35,000 held as collateral for the Letter of Credit constitutes property of the Debtor's estate. Moreover, Debtor demanded that Citibank "immediately freeze any draw down or transfer from the Letter of Creditor." Set forth in **Exhibit 4** attached hereto is a copy of the letter sent to Citibank dated December 11, 2015.

26.     In response to Citibank's request for more information concerning the Property, around December 16, 2015, Debtor provided Citibank with email exchanges between Koklonis and Samira, and the February 2013 bank statement evidencing the $35,000 withdrawal. Debtor again demanded that Citibank confirm the Letter of Credit was frozen until further notice. Set forth in **Exhibit 5** attached hereto is a copy of the letter sent to Citibank dated December 16, 2015.

27.     On December 17, 2015, Citibank responded that the bank statements did "evidence a withdrawal in the amount of $35,000 from the [Debtor's] bank account on February 26, 2013." Furthermore, Citibank stated that Koklonis and his counsel called Citibank

8

demanding the "funds in the account be made available to him since he [Koklonis] is the owner

of the account." <u>See</u> email between Michael Venditto and Andy Kong dated December 17,

2015, attached hereto as **Exhibit 6.**

28.    Citibank further acknowledged in its correspondence that until further notice it

had placed "an administrative hold on the [Checking Account] to prevent a transfer or

withdrawal of the funds while the matter is reviewed." <u>See</u> **Exhibit 6.**

29.    Based upon oral representations made by Citibank's counsel, the Debtor believes

there may also be a separate $200,000 certificate of deposit issued under Koklonis's personal

name that was opened using the Debtor's funds.

30.    On March 4, 2016, Debtor contacted Citibank and was informed that the $35,000

collateral to the Letter of Credit and the $200,000 certificate of deposit were on administrative

hold pending further resolution from the Bankruptcy Court.

31.    On or about March 7, 2016, the Debtor believes that Koklonis contacted Citibank

and demanded Citibank to release the Property to him.  Unfortunately, despite an administrative

hold on the account, Citibank released and transferred a certain amount of the Property to

Koklonis's personal account.

32.    On March 10, 2016, the Debtor received a letter from Citibank confirming that

"Koklonis has recently been able to access funds in his account and has demanded that he be

given access to the remaining funds." Set forth in **Exhibit 7** attached hereto is Citibank's

correspondence dated March 10, 2016 acknowledging the transfer of Property to Koklonis.

33.    Citibank confirmed that there still exists an administrative hold on the certificate

of deposit, but that, "it is impractical for Citibank to continue holding the funds indefinitely." As

such, Citibank stated that by 5 pm on Monday, March 14, 2016, "it may release its internal hold

and decide to whom, and under what conditions, the funds should be disbursed." Set forth in

**Exhibit 7** attached hereto is Citibank's correspondence dated March 10, 2016 informing of its

decision to release the Property.  As such, it is imperative for Plaintiff to seek immediate

injunctive relief to enjoin the Defendants from transferring any of the estate's Property including

the certificate of deposit until further resolution from this Court.

## FIRST CLAIM FOR RELIEF

*(For Injunctive Relief as Against the Defendants Under 11 U.S.C. § 105(a),*

*Rule 7064 and 7065 of the Federal Rules of Bankruptcy Procedure)*

34.    The Plaintiff realleges and incorporates herein by reference each and every

allegation contained in all prior paragraphs of this Complaint.

35.    Plaintiff alleges on information and belief that based upon the wrongful conduct

herein alleged and above and other conduct not yet discovered by the Plaintiff, Defendants will

transfer, withdraw, encumber or otherwise dispose of the assets, including the Property,  books

and records and/or other funds in its possession and/or in its control, which belong to the Estate

or in which the Estate has an interest, thereby preventing the Plaintiff from performing its duties

under 11 U.S.C. §§ 704(a), 1106(a) and 1107(a), and thereby preventing the Estate from ever

recovering the Property, or its equivalent by virtue of 11 U.S.C. § 550(a) or other applicable law.

36.    Plaintiff alleges on information and belief that, in the absence of an order from

this Court enjoining the Defendants from transferring, withdrawing, encumbering or otherwise

disposing of the Property and/or books and records in its possession or in its control, except in

the ordinary course of business and as reasonably and ordinarily required for support, the Estate

faces an imminent threat of irreparable harm, in that the Estate's ability to recover its property or

10

its equivalent will be lost forever, particularly if the Property and/or the funds or property is sequestered, concealed and/or otherwise placed beyond the reach of the Debtor, using lawful process and procedure.

37.    Plaintiff alleges on information and belief that an order prohibiting the Defendants from transferring, withdrawing, encumbering or otherwise disposing of the Property and/or books and records in its possession or in its control, except in the ordinary course of business and as reasonably and ordinarily required for support, under 11 U.S.C. § 105(a), Rule 7064 and 7065 of the Federal Rules of Bankruptcy Procedure is necessary and appropriate for the Debtor to carry out its duties under 11 U.S.C. §§ 704(a), 1106(a) and 1107(a), and to prevent interference with this Court's jurisdiction over the asset pursuant to 11 U.S.C. § 541(a) and 28 U.S.C. § 1334(d).

38.    Plaintiff alleges on information and belief that the balance of hardships between the parties weighs decidedly in favor of such an order as it does nothing more than preserve the status quo during the pendency of this adversary proceeding.

39.    Plaintiff alleges on information and belief that the Defendants will not suffer any appreciable harm as a result of such an order, insofar as the proposed injunction will not prevent them from conducting their business or supporting themselves.

40.    By reason of the foregoing, the Plaintiff is entitled to a temporary restraining order, followed by preliminary and/or permanent injunctions, prohibiting the Defendants from transferring, encumbering, withdrawing or otherwise disposing of the Property or books and records in its possession or in its control, except in the ordinary course of business and as reasonably and ordinarily required for support, until there is a final judgment or there is a

AFDOCS/13004788.1

complete satisfaction of judgment filed on behalf of the Plaintiff relative to any final judgment entered in its favor.

## SECOND CLAIM FOR RELIEF

*(For Turnover and Accounting of Debtor's Property Pursuant to 11 U.S.C. §§ 542(a), §543(a), and (b))*

41.    The Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

42.    This action also seeks the turnover of property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. §§541, 542, and 543 as well as an accounting in connection therewith.

43.    Plaintiff alleges on information and belief that the Property, including but not limited to, the certificate of deposit and Estate assets used as collateral, consists of property of the Estate by virtue of 11 U.S.C. § 541(a) and other applicable law.

44.    Plaintiff alleges on information and belief that Defendants are in possession and/or have control over the Property.

45.    Plaintiff alleges on information and belief that at all times material hereto, Citibank transferred assets, including the Debtor's Property, to Koklonis, despite having previously made expressly aware that the Property may constitute property of this Estate.

46.    Plaintiff alleges on information and belief that all times material hereto, Koklonis caused Citibank to transfer assets, including the Debtor's Property to him despite an administrative hold on the Letter of Credit.

47.    By virtue of the foregoing, the Plaintiff is entitled to an order for an accounting and turnover to the Plaintiff of the Property.

48.    The Plaintiff demands the entry of judgment against the Defendants (a) ordering them to turnover to the Plaintiff all funds, property, assets, and other things of value acquired

12

with the Property that was misappropriated from the Debtor, (b) ordering them to account to the

Plaintiff regarding the status, use and current location of Debtor's funds, the Property, and assets;

and (c) for such other and further relief this Court deems just and appropriate.

### THIRD CLAIM FOR RELIEF

*(For Declaratory Relief Regarding the Estate's Interest in the Property and Other Monetary and*

*Non-Monetary Estate Assets Used as Collateral Pursuant to 28 U.S.C. §§ 2201 and 2202 and 11 U.S.C. §*

*541(a)(1) and (a)(4))*

49.     The Plaintiff realleges and incorporates herein by reference each and every

allegation contained in all prior paragraphs of this Complaint.

50.     Plaintiff alleges on information and belief that an actual controversy has arisen

between the Defendants, on the one hand, and the Plaintiff, on the other, in which the Plaintiff

contends that pursuant to 11 U.S.C. § 541(a), the Property, transferred and/or possessed,

wrongfully or otherwise, as alleged hereinabove involve or constitute property of this Estate

and/or that the Estate holds an interest in the Property.  Plaintiff alleges on information and belief

that Defendants contend that the Property does *not* constitute or involve property of the Estate

and that the Estate does *not* have an interest in the Property.

51.     Plaintiff alleges on information and belief that an actual controversy has arisen

between the Defendants, on the one hand, and the Plaintiff on the other, in which the Plaintiff

contends that at all times relevant and material to this Complaint, the Property was, and should

be characterized as, property of this Estate or that the Estate has an interest in the Property.

AFDOCS/13004788.1

52.     Plaintiff alleges on information and belief that the Defendants contend that the

Property, is not, and cannot be characterized as, property of this Estate and that the Estate does

not have an interest in the Property.

53.     A declaration from this Court adjudicating the rights of the Debtor with respect to

the character of the Property with respect to whether or not such Property is property of the

Estate or that the Estate holds an interest in the Property is necessary in order for the Debtor to

be able to perform its duties under 11 U.S.C. §§ 704(a), 1106(a) and 1107(a).

54.     As a result of the foregoing, the Plaintiff is entitled to a declaratory relief

judgment to the effect that the Property, in the possession and/or control of the Defendants that is

the subject of the allegations in this Complaint is property of this Estate or that the Estate holds

an interest in the Property and that the Property is and should be characterized as estate property.


**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1.     <u>On the First Claim for Relief</u>:

A.     For an order prohibiting the Defendants from transferring, withdrawing,

encumbering or otherwise disposing of the Property, including but not limited to other Estate

assets used as collateral, and/or books and records in its possession or in its control, except in the

ordinary course of business and as reasonably and ordinarily required for support.

2.     <u>On the Second Claim for Relief</u>:

A.     For turnover of the Property, including but not limited to other Estate

assets used as collateral, or their value, in an amount to be established according to proof at trial,

owned, controlled and/or possessed by the Defendants.

14

3.    <u>On the Third Claim for Relief</u>:

A.    For a declaration that the Property, including but not limited to other Estate assets used as collateral, are property of this Estate and/or that the Estate holds an interest in the Property.

4.    For such other and further relief as this Court deems necessary and appropriate to carry out the provisions of the Bankruptcy Code or to further the interests of justice.

Dated: March 14, 2016                    Respectfully submitted,

ARENT FOX LLP

By:  */s/ George V. Utlik*
     George V. Utlik
     1675 Broadway
     New York, New York 10019
     Telephone: (212) 484-3900
     Facsimile: (212) 484-3990
     george.utlik@arentfox.com

     Aram Ordubegian
     (admitted *pro hac vice*)
     Andy S. Kong
     (admitted *pro hac vice* )
     555 West Fifth Street, 48th Floor
     Los Angeles, CA  90013
     Telephone: (213) 629-7400
     Facsimile:  (213) 629-7401
     aram.ordubegian@arentfox.com
     andy.kong@arentfox.com

     *General Bankruptcy and Restructuring Counsel
     to the Debtor*

AFDOCS/13004788.1

# EXHIBIT 1

# Dominic Fennell

| | |
|---|---|
| From: | Frank Ferro |
| Sent: | Tuesday, February 26, 2013 1:34 PM |
| To: | NKrne |
| Cc: | Samira Abid; Dominic Fennell |
| Subject: | RE: Standby Letter of Credit for British Airways |

Samira

How do companies get letters of credit from Citibank

I thought every day of the week

How can we use a someones personal account to get a business letter of credit

This doesn't make any sense to me

Best Regards,
**Frank Ferro**

Global Chief Financial Officer
AirFastticktets
O.    212-652-8152
c. 646-581-0418
Skype: Frank.ferro8
a.    875, 3rd Avenue, 3rd Floor, NYC, New York, 10022
e.    frank.ferro@airfasttickets.com
w.    www.airfasttickets.com

air fast tickets
get on board !

CONFIDENTIALITY NOTICE:
This e-mail is confidential. Any unauthorized disclosure, copying, distribution or use is
prohibited and may be unlawful. If you have received this communication in error, please
immediately notify the sender and delete the entire communication from your system.

**From:** NIKOLAOS KOKLONIS [mailto:nkoklonis@me.com]
**Sent:** Tuesday, February 26, 2013 12:51 PM
**To:** Frank Ferro
**Cc:** Samira Abid
**Subject:** Fwd: Standby Letter of Credit for British Airways

Begin forwarded message:

frank help us

Nikolaos,

but we got audited and I must use a collateral from the personal account.

account.
Our risk department doesn't allow us to use a business account as a collateral, I understand that the previous L/C we used the collateral using your business
Our platform is a private bank platform, there are some transactions that has to be done in a different way from the commercial platform.

Thanks
Samira

**From:** "Abid, Samira " <samira.abid@citi.com>
**Subject: RE: Standby Letter of Credit for British Airways**
**Date:** February 26, 2013 12:06:49 PM EST
**To:** 'NIKOLAOS KOKLONIS' <nkoklonis@me.com>
**Cc:** "'Nikolaos Koklonis (nkoklonis@airfasttickets.com)'" <nkoklonis@airfasttickets.com>

**From:** NIKOLAOS KOKLONIS [mailto:nkoklonis@me.com]
**Sent:** Tuesday, February 26, 2013 11:44 AM
**To:** Abid, Samira [RCB-C]
**Cc:** "Nikolaos Koklonis (nkoklonis@airfasttickets.com)"
**Subject:** Re: Standby Letter of Credit for British Airways

Hi Samira i must ask Frank if this allowed but why you cannt do the same with airfasttickets account?
On Feb 26, 2013, at 10:26 AM, "Abid, Samira " <samira.abid@citi.com> wrote:

2

Hi Nikolaos,

We need a collateral in order to issue the L/c but I have to open a certificate of deposit using your personal account.
Can I move $35,000 from Airfastticket and use it to open the cd in your personal account.

Regards,

**Samira Abid**
Banking Advisor
2nd Vice President
Citigold International
Citibank, N.A.
601 Lexington Avenue, 17th Floor | New York | NY | 10022
**Tel.: (212) 559 0782 | Fax: (212) 793 1022**

<image001.png>

Registered Representative -- Citigroup Global Markets Inc.

Important Disclaimers

Investment and Insurance Products:  • NOT FDIC INSURED • NOT A BANK DEPOSIT • NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY • NO BANK GUARANTEE • MAY LOSE VALUE

# EXHIBIT 2



**citibank** ®

Citibank CBO Services        465
P.O. Box 769018
San Antonio, Texas 78245

00020985 BB CCC 059 JSW0#5IC XL1 1 0RM 0

**CitiBusiness** ®

0-0/R1/20F000
R

053
CITIBANK, N. A.
**Account**
4967626896
**Statement Period**
Feb 1 - Feb 28, 2013
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990

Page 1  of  18

AIRFASTTICKETS, INC.
875 3RD AVE, 3RD FLOOR
NEW YORK                    NY 10022-7218

---

## CitiBusiness® ACCOUNT AS OF FEBRUARY 28, 2013

### Relationship Summary:

| | | |
|---|---|---|
| Checking | $2,453,500.95 | |
| Savings | $8,269,604.91 | |
| Checking Plus | ----- | |

| Checking | | Balance |
|---|---|---|
| CitiBusiness Checking | | $2,453,500.95 |
| CitiBusiness Streamlined Checking | | $0.00 |

| Savings | | Balance |
|---|---|---|
| CitiBusiness Savings | | $8,001,622.08 |
| CitiBusiness 1 Year CD  9946878843 | | $167,843.01 |
| CitiBusiness 1 Year CD  9946893947 | | $100,139.82 |

| **Total Checking and Savings at Citibank** | | **$10,723,105.86** |
|---|---|---|

---

## SERVICE CHARGE SUMMARY FROM JANUARY 1, 2013 THRU JANUARY 31, 2013

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **CITIBUSINESS CHECKING # 4967626896** | | | |
| Average Daily Collected Balance | | | $5,417,076.12 |
| DEPOSIT SERVICES | | | |
| DEPOSIT ASSESSMENT | 5,417,076 | | 598.10 |
| MONTHLY MAINTENANCE FEE | 1 | 22.0000 | 22.00 |
| CHECKS PAID | 4 | .2000 | 0.80 |
| DEPOSIT TICKETS | 2 | .8000 | 1.60 |
| ITEMS DEPOSITED | 1 | .2000 | 0.20 |
| CITIBUSINESS ONLINE | | | |
| CASH MANAGER SUITE | 1 | 75.0000 | 75.00 |
| CASH MANAGEMENT | | | |
| ZBA PARENT | 1 | 35.0000 | 35.00 |
| CITIBUSINESS ONLINE | | | |
| CBOL - OUT. DOMESTIC WIRE TXFR | 2 | 14.0000 | 28.00 |
| CBOL-OUT. INTERNAT'L WIRE TXFR | 8 | 25.0000 | 200.00 |
| TRANSFER SERVICES | | | |
| INCOMING WIRE TRANSFER | 2 | 12.0000 | 24.00 |
| AUTOMATED CLEARING HOUSE (ACH) | | | |
| ACH CREDIT RECEIVED | 2 | .1500 | 0.30 |
| ACH DEBIT RECEIVED | 29 | .1500 | 4.35 |
| **Total Charges for Services** | | | **$989.35** |
| Average collected balances | | | $5,417,076.12 |

63

AIRFASTTICKETS, INC.

Account 4967626896          Page 2 of 18
Statement Period: Feb 1 - Feb 28, 2013

0-0/R1/20F000

## SERVICE CHARGE SUMMARY FROM JANUARY 1, 2013 THRU JANUARY 31, 2013          Continued

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| Balances eligible for Earnings Credit | | | $5,417,076.12 |
| Balances Required to Offset Service Charges | | | $3,883,198.75 |
| Earnings Credit allowance at  0.30000% | | | $989.35 [1] |
| Charges Subject to Earnings Credit | | | $989.35 |
| Net Service Charge | | | $0.00 |

1 - Maximum Earnings Credit cannot exceed monthly fees eligible for offset

### STREAMLINED CHECKING # 4972700376

| | No./Units | Price/Unit | Amount |
|---|---|---|---|
| Average Daily Collected Balance | | | $0.00 |
| DEPOSIT SERVICES | | | |
| MONTHLY MAINTENANCE FEE | 1 | 19.0000 | 19.00 |
| CHECKS, DEP ITEMS/TICKETS, ACH | 6 | .3000 | 1.80 |
| **WAIVE | | | |
| CASH MANAGEMENT | | | |
| ZBA CHILD (1-4) | 1 | 25.0000 | 25.00 |
| AUTOMATED CLEARING HOUSE (ACH) | | | |
| ACH DEBIT BLOCK | 1 | 23.0000 | 23.00 |
| ACH DEBIT FILTER | 1 | 6.0000 | 6.00 |
| ACH DEBIT FILTER | 1 | 3.5000 | 3.50 |
| Total Charges for Services | | | $76.50 |
| Net Service Charge | | | $76.50 |

Charges debited from account # 4972700376

### CITIBUSINESS SAVINGS # 4975395901

| | No./Units | Price/Unit | Amount |
|---|---|---|---|
| Average Daily Collected Balance | | | $2,322,593.37 |
| DEPOSIT SERVICES | | | |
| DEPOSIT TICKETS | 1 | .0000 | 0.00 |
| Total Charges for Services | | | $0.00 |
| Net Service Charge | | | $0.00 |

## CHECKING ACTIVITY

### CitiBusiness Checking
4967626896

Beginning Balance:    $2,987,545.28
Ending Balance:       $2,453,500.95

| Date | Description | | | Debits | Credits | Balance |
|---|---|---|---|---|---|---|
| 02/01 | CHECK NO: | 1311 | | 4,256.77 | | 2,983,288.51 |
| 02/01 | ACH DEBIT | | | 6.00 | | 2,983,282.51 |
| | ADP PAYROLL FEES ADP - FEES 2RT8A  2153165 Feb 01 | | | | | |
| 02/05 | CHECK NO: | 1274 | | 192.50 | | 2,983,090.01 |
| 02/05 | ACH DEBIT | | | 245.00 | | 2,982,845.01 |
| | MBI      SETL      MED-I-BANK      Feb 05 | | | | | |
| 02/06 | CHECK NO: | 1294 | | 19.30 | | 2,982,825.71 |
| 02/06 | CHECK NO: | 1295 | | 65.00 | | 2,982,760.71 |
| 02/06 | ACH DEBIT | | | 104.00 | | 2,982,656.71 |
| | MBI      SETL      MED-I-BANK      Feb 06 | | | | | |
| 02/07 | CHECK NO: | 1288 | | 28.60 | | 2,982,628.11 |
| 02/07 | CHECK NO: | 1291 | | 54.44 | | 2,982,573.67 |
| 02/07 | CHECK NO: | 5000 | | 125.00 | | 2,982,448.67 |
| 02/07 | CHECK NO: | 1301 | | 215.04 | | 2,982,233.63 |

# citibank®
CitiBusiness®

AIRFASTTICKETS, INC.

Account  4967626896       Page 3 of 18
Statement Period:  Feb 1 - Feb 28, 2013

0-D/R I/20F000
R

## CHECKING ACTIVITY

Continued

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 02/07 | CHECK NO:   1317 | 139.00 | | 2,982,094.63 |
| 02/07 | CHECK NO:   1298 | 171.69 | | 2,981,922.94 |
| 02/07 | CHECK NO:   1305 | 256.06 | | 2,981,666.88 |
| 02/07 | ACH DEBIT | 740.74 | | 2,980,926.14 |
| | VERIZON FINANCIA PAYMENTS  0000001303   Feb 07 | | | |
| 02/07 | CHECK NO:   1283 | 772.09 | | 2,980,154.05 |
| 02/07 | CHECK NO:   1314 | 1,061.41 | | 2,979,092.64 |
| 02/07 | CHECK NO:   67626896 | 2,142.57 | | 2,976,950.07 |
| 02/07 | ACH DEBIT | 10,237.06 | | 2,966,713.01 |
| | OXFORD HEALTH   PREMIUMS  AI23453   Feb 07 | | | |
| 02/07 | ACH DEBIT | 19,710.47 | | 2,947,002.54 |
| | AMERICAN EXPRESS ARC PMT  0000001321   Feb 07 | | | |
| 02/08 | FUNDING TRANSFER | 76.50 | | 2,946,926.04 |
| | TRANSFER TO 010000000004972700376 | | | |
| 02/08 | ACH DEBIT | 20.00 | | 2,946,906.04 |
| | MBI      SETL    MED-I-BANK   Feb 08 | | | |
| 02/08 | CHECK NO:   1299 | 48.89 | | 2,946,857.15 |
| 02/08 | ACH DEBIT | 72.50 | | 2,946,784.65 |
| | ADP PAYROLL FEES ADP - FEES 2RT8A  2431634 Feb 08 | | | |
| 02/08 | ACH DEBIT | 76.70 | | 2,946,707.95 |
| | ADP PAYROLL FEES ADP - FEES 2RT8A  2431635 Feb 08 | | | |
| 02/08 | CHECK NO:   1293 | 81.66 | | 2,946,626.29 |
| 02/08 | CHECK NO:   1292 | 85.64 | | 2,946,540.65 |
| 02/08 | CHECK NO:   1275 | 291.04 | | 2,946,249.61 |
| 02/08 | CHECK NO:   1307 | 534.08 | | 2,945,715.53 |
| 02/08 | CHECK NO:   1286 | 1,142.41 | | 2,944,573.12 |
| 02/08 | CHECK NO:   1289 | 1,774.45 | | 2,942,798.67 |
| 02/08 | CHECK NO:   1308 | 1,834.21 | | 2,940,964.46 |
| 02/08 | ACH DEBIT | 2,722.31 | | 2,938,242.15 |
| | Verizon Wireless Payment  0000001304   Feb 08 | | | |
| 02/11 | CHECK NO:   1323 | 1,500.00 | | 2,936,742.15 |
| 02/11 | CHECK NO:   1300 | 4.99 | | 2,936,737.16 |
| 02/11 | CHECK NO:   1290 | 30.65 | | 2,936,706.51 |
| 02/11 | CHECK NO:   1282 | 42.62 | | 2,936,663.89 |
| 02/11 | ACH DEBIT | 48.59 | | 2,936,615.30 |
| | MBI      SETL    MED-I-BANK   Feb 11 | | | |
| 02/11 | ACH DEBIT | 50.00 | | 2,936,565.30 |
| | PRIMEPAY INVOICE INVOICE        Feb 11 | | | |
| 02/11 | CHECK NO:   1318 | 60.53 | | 2,936,504.77 |
| 02/11 | CHECK NO:   1306 | 60.99 | | 2,936,443.78 |
| 02/11 | CHECK NO:   1265 | 360.00 | | 2,936,083.78 |
| 02/11 | CHECK NO:   1287 | 900.00 | | 2,935,183.78 |
| 02/11 | CHECK NO:   1320 | 900.00 | | 2,934,283.78 |
| 02/11 | CHECK NO:   1316 | 2,700.00 | | 2,931,583.78 |
| 02/11 | CHECK NO:   1313 | 3,909.05 | | 2,927,674.73 |
| 02/11 | CHECK NO:   1315 | 28,957.41 | | 2,898,717.32 |
| 02/12 | CBUSOL INTERNATIONAL WIRE OUT | 11,465.80 | | 2,887,251.52 |
| 02/12 | CBUSOL INTERNATIONAL WIRE OUT | 43,129.80 | | 2,844,121.72 |
| 02/12 | ACH DEBIT | 95.00 | | 2,844,026.72 |
| | MBI      SETL    MED-I-BANK   Feb 12 | | | |
| 02/12 | CHECK NO:   1296 | 4,724.50 | | 2,839,302.22 |
| 02/13 | ACH DEBIT | 29.00 | | 2,839,273.22 |
| | MBI      SETL    MED-I-BANK   Feb 13 | | | |
| 02/14 | CHECK NO:   1333 | 300.00 | | 2,838,973.22 |
| 02/14 | CHECK NO:   1331 | 500.00 | | 2,838,473.22 |
| 02/14 | CHECK NO:   1302 | 225.00 | | 2,838,248.22 |
| 02/14 | ACH DEBIT | 33,032.97 | | 2,805,215.25 |
| | ADP TX/FINCL SVC ADP - TAX RFT8A 021503A01 Feb 14 | | | |
| 02/14 | ACH DEBIT | 50,475.28 | | 2,754,739.97 |
| | ADP TX/FINCL SVC ADP - TAX 440026645820T6A Feb 14 | | | |
| 02/15 | CBUSOL INTERNATIONAL WIRE OUT | 9,834.00 | | 2,744,905.97 |
| 02/15 | CHECK NO:   1325 | 15.00 | | 2,744,890.97 |
| 02/15 | ACH DEBIT | 50.00 | | 2,744,840.97 |
| | MBI      SETL    MED-I-BANK   Feb 15 | | | |
| 02/15 | CHECK NO:   1324 | 202.00 | | 2,744,638.97 |
| 02/19 | ACH DEBIT | 20.00 | | 2,744,618.97 |
| | MBI      SETL    MED-I-BANK   Feb 19 | | | |
| 02/19 | CHECK NO:   1327 | 78.75 | | 2,744,540.22 |
| 02/19 | CHECK NO:   1273 | 874.50 | | 2,743,665.72 |
| 02/19 | CHECK NO:   1329 | 1,036.56 | | 2,742,629.16 |
| 02/20 | CHECK NO:   1330 | 11.33 | | 2,742,617.83 |
| 02/20 | CHECK NO:   1312 | 57.00 | | 2,742,560.83 |
| 02/21 | ELECTRONIC CREDIT | | 3,603.78 | 2,746,164.61 |
| | PAYPAL       TRANSFER 4KJ226S6FX6AQ  Feb 21 | | | |

AIRFASTTICKETS, INC.

Account  4967626896     Page 4 of 18
Statement Period:  Feb 1 - Feb 28, 2013

0-0/R I/20F000

## CHECKING ACTIVITY                                                                 Continued

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/21 | CBUSOL INTERNATIONAL WIRE OUT | 39,537.80 | | 2,706,626.81 |
| 02/21 | CBUSOL INTERNATIONAL WIRE OUT | 113,874.50 | | 2,592,752.31 |
| 02/21 | CBUSOL TRANSFER DEBIT | 2,295.00 | | 2,590,457.31 |
| | WIRE TO BSIS LLC | | | |
| 02/22 | OFF-US ATM WITHDRAWAL | 102.00 | | 2,590,355.31 |
| | 875 3RD AVENUE RIGHT  NEW YORK    NYUS | | | |
| 02/22 | OFF-US ATM WITHDRAWAL | 502.00 | | 2,589,853.31 |
| | 875 3RD AVENUE LEFT  NEW YORK    NYUS | | | |
| 02/22 | ACH DEBIT | 52.70 | | 2,589,800.61 |
| | ADP PAYROLL FEES  ADP - FEES 8YRUNT8A2977773 Feb 22 | | | |
| 02/22 | ACH DEBIT | 87.57 | | 2,589,713.04 |
| | ADP PAYROLL FEES  ADP - FEES 2RT8A  2988021 Feb 22 | | | |
| 02/25 | CHECK NO:    1336 | 10.88 | | 2,589,702.16 |
| 02/25 | ACH DEBIT | 60.00 | | 2,589,642.16 |
| | MBI     SETL   MED-I-BANK   Feb 25 | | | |
| 02/25 | CHECK NO:    1342 | 5,765.00 | | 2,583,877.16 |
| 02/26 | WITHDRAWAL | 35,000.00 | | 2,548,877.16 |
| 02/26 | CHECK NO:    1340 | 467.17 | | 2,548,409.99 |
| | ONLINE FUNDING TRANSFER TO  01 4972700376 | | | |
| 02/26 | ON-LINE FUNDING DEBIT | 4,623.24 | | 2,543,786.75 |
| 02/27 | ACH DEBIT | 29.00 | | 2,543,757.75 |
| | MBI     SETL   MED-I-BANK   Feb 27 | | | |
| 02/27 | CHECK NO:    1335 | 1,277.70 | | 2,542,480.05 |
| 02/27 | ACH DEBIT | 2,582.60 | | 2,539,897.45 |
| | Verizon Wireless Payment  0000001336   Feb 27 | | | |
| 02/27 | ACH DEBIT | 32,716.62 | | 2,507,180.83 |
| | ADP TX/FINCL SVC  ADP - TAX  RFT8A 022804A01 Feb 27 | | | |
| 02/27 | ACH DEBIT | 52,052.88 | | 2,455,127.95 |
| | ADP TX/FINCL SVC  ADP - TAX  711020693485T8A Feb 27 | | | |
| 02/28 | DEPOSIT | | 1,019.60 | 2,456,147.55 |
| 02/28 | OFF-US ATM WITHDRAWAL | 402.00 | | 2,455,745.55 |
| | 875 3RD AVENUE LEFT  NEW YORK    NYUS | | | |
| 02/28 | OFF-US ATM WITHDRAWAL | 402.00 | | 2,455,343.55 |
| | 875 3RD AVENUE LEFT  NEW YORK    NYUS | | | |
| 02/28 | CHECK NO:    1334 | 181.44 | | 2,455,162.11 |
| 02/28 | ACH DEBIT | 50.00 | | 2,455,112.11 |
| | MBI     SETL   MED-I-BANK   Feb 28 | | | |
| 02/28 | CHECK NO:    5002 | 128.94 | | 2,454,983.17 |
| 02/28 | CHECK NO:    1328 | 300.00 | | 2,454,683.17 |
| 02/28 | CHECK NO:    5001 | 577.12 | | 2,454,106.05 |
| 02/28 | ACH DEBIT | 605.10 | | 2,453,500.95 |
| | THE HARTFORD  NWTBCLSCIC 13734756    Feb 28 | | | |
| | **Total Debits/Credits** | **538,667.71** | **4,623.38** | |

### Checks Paid

| Check | Date | Amount | Check | Date | Amount | Check | Date | Amount |
|-------|------|--------|-------|------|--------|-------|------|--------|
| 01273 | 02/19 | 874.50 | 01274 | 02/05 | 192.50 | 01275 | 02/08 | 291.04 |
| 01282* | 02/11 | 42.62 | 01283 | 02/07 | 772.09 | 01285* | 02/11 | 360.00 |
| 01286 | 02/08 | 1,142.41 | 01287 | 02/11 | 900.00 | 01288 | 02/07 | 28.60 |
| 01289 | 02/08 | 1,774.45 | 01290 | 02/11 | 30.65 | 01291 | 02/07 | 54.44 |
| 01292 | 02/08 | 85.64 | 01293 | 02/08 | 81.66 | 01294 | 02/06 | 19.30 |
| 01295 | 02/06 | 65.00 | 01296 | 02/12 | 4,724.50 | 01298* | 02/07 | 171.69 |
| 01299 | 02/08 | 48.89 | 01300 | 02/11 | 4.99 | 01301 | 02/07 | 215.04 |
| 01302 | 02/14 | 225.00 | 01305* | 02/07 | 256.06 | 01306 | 02/11 | 60.99 |
| 01307 | 02/08 | 534.08 | 01308 | 02/08 | 1,834.21 | 01311* | 02/01 | 4,256.77 |
| 01312 | 02/20 | 57.00 | 01313 | 02/11 | 3,909.05 | 01314 | 02/07 | 1,061.41 |
| 01315 | 02/11 | 28,957.41 | 01316 | 02/11 | 2,700.00 | 01317 | 02/07 | 139.00 |
| 01318 | 02/11 | 60.53 | 01320* | 02/11 | 900.00 | 01323* | 02/11 | 1,500.00 |
| 01324 | 02/15 | 202.00 | 01325 | 02/15 | 15.00 | 01327* | 02/19 | 78.75 |
| 01328 | 02/28 | 300.00 | 01329 | 02/19 | 1,036.56 | 01330 | 02/20 | 11.33 |
| 01331 | 02/14 | 500.00 | 01333* | 02/14 | 300.00 | 01334 | 02/28 | 181.44 |
| 01335 | 02/27 | 1,277.70 | 01336 | 02/25 | 10.88 | 01340* | 02/26 | 467.17 |
| 01342* | 02/25 | 5,765.00 | 05000* | 02/07 | 125.00 | 05001 | 02/28 | 577.12 |
| 05002 | 02/28 | 128.94 | 67626896* | 02/07 | 2,142.57 | | | |

* indicates gap in check number sequence     Number Checks Paid:  53     Totaling:  $71,450.98


**citibank**
AIRFASTTICKETS, INC.

**CitiBusiness®**

Account   4967626896          Page 5 of 18
Statement Period: Feb 1 - Feb 28, 2013

0-0/R1/20F000
R

## CHECKING ACTIVITY                                                          Continued

**CitiBusiness Streamlined Checking**
**4972700376**

Beginning Balance:     $0.00
Ending Balance:        $0.00

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/08 | FUNDING TRANSFER | | 76.50 | 76.50 |
| | TRANSFER FROM 010000000004967626896 | | | |
| 02/08 | SERVICE CHARGE | 76.50 | | 0.00 |
| | ACCT ANALYSIS DIRECT DB | | | |
| 02/27 | ON-LINE FUNDING CREDIT | | 4,623.24 | 4,623.24 |
| | ONLINE FUNDING TRANSFER FROM 01  4967626896 | | | |
| 02/27 | ACH DEBIT | 4,623.24 | | 0.00 |
| | SETTLEMENT PLAN  PED 021713 33660421      Feb 27 | | | |
| | Total Debits/Credits | 4,699.74 | 4,699.74 | |

## SAVINGS ACTIVITY

**Certificates of Deposit**

| Type | Number | Maturity | Interest Rate | Annual Percentage Yield (APY) | Last Interest Paid | Balance |
|------|--------|----------|---------------|-------------------------------|--------------------|---------|
| 1 YR BSN CD | 9946878843 | 03/27/13 | 0.30% | 0.30% | | $167,843.01 |
| 1 YR BSN CD | 9946893947 | 09/12/13 | 0.30% | 0.30% | | $100,139.82 |
| Total Certificates of Deposit | | | | | | $267,982.83 |

**CitiBusiness 1 Year CD**
**9946878843**

Beginning Balance:     $167,804.39
Ending Balance:        $167,843.01

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/28 | INTEREST CREDIT | | 38.62 | 167,843.01 |

**CitiBusiness 1 Year CD**
**9946893947**

Beginning Balance:     $100,116.78
Ending Balance:        $100,139.82

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/28 | INTEREST CREDIT | | 23.04 | 100,139.82 |

**CitiBusiness Savings**
**4975395901**

Beginning Balance:     $8,000,394.53
Ending Balance:        $8,001,622.08

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/28 | INTEREST CREDIT | | 1,227.55 | 8,001,622.08 |

Interest earned year to date  $1,622.08

| Your CitiBusiness Savings Account Rates | | | |
|-----------------------------------------|---|---|---|
| For Balances of: | $0 to $99,999 | $100,000 to $249,999 | $250,000 and over |
| 2/01 - 2/28 | 0.150% | 0.200% | 0.200% |

*D70610690016200003*
YNNN-NNNN-NNNN-NNNN

EXHIBIT 3

# Citibank, N.A.

DATE: MARCH 14, 2013

IRREVOCABLE STANDBY LETTER OF CREDIT NO.: 63667598

BENEFICIARY:
BRITISH AIRWAYS, PLC
FINANCIAL OPERATIONS
JFK INTERNATIONAL AIRPORT
TERMINAL 7, BUILDING 59
JAMAICA, NY 11430

APPLICANT:
AIRFASTTICKETS, INC.
875 3RD AVENUE, 3RD FLOOR
NEW YORK, NY 10022

GENTLEMEN:

BY ORDER OF OUR CLIENT, AIRFASTTICKETS, INC. (THE 'APPLICANT'), WE HEREBY OPEN OUR IRREVOCABLE STANDBY LETTER OF CREDIT NO. 63667598, IN YOUR FAVOR FOR AN AMOUNT NOT TO EXCEED IN AGGREGATE USD 35,000.00 (THIRTY FIVE THOUSAND AND 00/100 UNITED STATES DOLLARS), EFFECTIVE IMMEDIATELY AND EXPIRING AT THE OFFICE OF OUR SERVICER, CITICORP NORTH AMERICA, INC. AT 3800 CITIBANK CENTER, BUILDING B, 3RD FLOOR, TAMPA, FLORIDA 33610 ATTN: U.S. STANDBY LETTER OF CREDIT UNIT OR SUCH OTHER OFFICE AS WE MAY ADVISE YOU FROM TIME TO TIME (THE 'OFFICE'), ON MARCH 1, 2014.

FUNDS HEREUNDER ARE AVAILABLE TO YOU AGAINST PRESENTATION OF YOUR SIGHT DRAFT(S), DRAWN ON US, MENTIONING THEREON OUR LETTER OF CREDIT NO. 63667598, ACCOMPANIED BY YOUR WRITTEN AND DATED STATEMENT, SIGNED BY AN OFFICER OF YOUR COMPANY, STATING THE FOLLOWING:

"AIRFASTTICKETS, INC. HAS FAILED TO COMPLY WITH THE TERMS AND CONDITIONS OF CONTRACT SPECIFYING THE PARAGRAPH(S) AND/OR CLAUSE(S) IN DEFAULT."

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT SHALL BE DEEMED AUTOMATICALLY EXTENDED, WITHOUT AMENDMENT, FOR ADDITIONAL PERIOD(S) OF ONE YEAR FROM THE EXPIRY DATE HEREOF, OR ANY FUTURE EXPIRATION DATE, BUT NOT BEYOND MARCH 1, 2015, UNLESS AT LEAST THIRTY (30) DAYS PRIOR TO ANY EXPIRATION DATE WE NOTIFY YOU BY REGISTERED MAIL OR BY ANY OTHER RECEIPTED MEANS THAT WE ELECT NOT TO CONSIDER THIS LETTER OF CREDIT RENEWED FOR ANY SUCH ADDITIONAL PERIOD.

WE HEREBY AGREE WITH YOU TO HONOR EACH DRAFT DRAWN UNDER AND IN COMPLIANCE WITH THE TERMS AND CONDITIONS OF THIS LETTER OF CREDIT IF PRESENTED, TOGETHER WITH THE DOCUMENTS SPECIFIED AT THIS OFFICE ON OR BEFORE THE STATED EXPIRATION DATE.

SHOULD YOU HAVE OCCASION TO COMMUNICATE WITH US REGARDING THIS LETTER OF CREDIT, PLEASE DIRECT YOUR CORRESPONDENCE TO OUR OFFICE, MAKING SPECIFIC MENTION OF THE LETTER OF CREDIT NUMBER INDICATED ABOVE.

EXCEPT AS FAR AS OTHERWISE EXPRESSLY STATED HEREIN, THIS STANDBY LETTER OF CREDIT IS SUBJECT TO THE INTERNATIONAL STANDBY PRACTICES ('ISP98'),

# Citibank, N.A.

INTERNATIONAL CHAMBER OF COMMERCE, PUBLICATION NO. 590, AND AS TO MATTERS NOT GOVERNED BY THE ISP98, SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND APPLICABLE U.S. FEDERAL LAW.

VERY TRULY YOURS,

CITIBANK, N.A.
BY: BARBARA FERNANDEZ, VICE PRESIDENT

BY: _____
    AUTHORIZED SIGNATURE

PAGE 2 OF 2



### Sales Agreement

### GR-UK&I Tour Operator Private Fares 1FEB2014–31DEC14

In Athens, Greece, today 1 February 2014 by and between:

**A. "BRITISH AIRWAYS PLC.",** a company having its registered office in England, and maintaining offices (station) in Greece (18, Ploutarchou Str. 10676 Athens),  (Α.Φ.Μ 098002125  Δ.Ο.Υ  ΦΑΕ ΑΘΗΝΩΝ), lawfully represented by Frederiki Stier (hereinafter "the Carrier" or "BA") and

**B. "FAST GROUP SA"** with the trade name **"AIRFAST TICKETS"**, having its registered office in Greece (6 Skouze Street, 18536 Piraeus) (ΑΦΜ 997930078, ΔΟΥ ΦΑΕ ΠΕΙΡΑΙΑ), lawfully represented by Ron Yeatman, IATA agent nos. 272 0708 4 (hereinafter "the Travel Agent"),

the following were mutually agreed and accepted:

### 1. Duration of the Agreement

1.1     This Agreement comes into force from 1 February 2014 and is valid until 31 December 2014.

1.2.     Either party may terminate this Agreement by written notice with immediate effect in the event of non-performance or improper performance by one party of its obligations hereunder or the terms hereof (including but not limited to abuse or misuse of discount or tickets), all of which are deemed substantial.

1.3.     British Airways may terminate this Agreement without cost by written notice with immediate effect if tickets are issued by the Travel Agent for another agency, in a manner which British Airways considers would have a material effect on the Performance Reward payment due under this Agreement (unless Travel Agent has first obtained British Airways' approval for the inclusion of that ticketing activity within this Agreement).

### 2. Special Tour Operator Fares

2.1     **Applicable Fares and Destinations:** Special GR-UK&I Tour Operator private fares as displayed in Travel Agent's reservation systems :
Amadeus (ATHGR2771)
Sabre (8UAG)
Wspan (7O2)
and sold only in connection with a hotel voucher issued by Airfast Tickets.

2.2     **Valid Ticket Period:** Valid for tickets sold between 1FEB2014–31DEC2014.

## 3. General Provisions

**3.1.    Set Off.** British Airways may set off any monies due to the Travel Agent under this Agreement against any other debts payable by the Travel Agent to British Airways under this or any other Agreement.

**3.2    Confidentiality.** Each party undertakes to keep confidential (and use all reasonable endeavours to

ensure that its officers, employees and agents keep confidential) the terms and conditions of this agreement, and any data transferred pursuant to this agreement, except that BA may disclose such confidential information to its subsidiaries, its affiliates, or its immunized alliance airline partners. Nothing in this Clause shall prevent BA disclosing such confidential information to any third party which it uses to provide data processing or analysis provided that BA ensures that any such third party keeps the information confidential. BA reserves the right to immediately terminate this agreement to deny and or revoke any incentive due or payable if this paragraph is violated.

**3.3.    Partial nullity.** If any term or provision of this Agreement shall in whole or in part be held to any extent to be illegal or unenforceable under any enactment or rule, that term of provision or part shall to that

extent be deemed not to form part of this Agreement and the enforceability of this Agreement shall not be

affected. Fares which are the subject hereof are subject to availability in appropriate booking class, and to existing schedule, products, and services.

**3.4.    Non-assignable.** This Agreement is personal to the Travel Agent. The Travel Agent shall not assign, sub contract or transfer this Agreement without British Airways prior written consent. To be effective all variations to this Agreement must be in writing and be signed by an authorised signatory of each party.

**3.5.    Amendment.** All amendments and additions hereto shall be valid only if executed in writing and signed by the duly authorized representatives of both Parties.

**3.6.    Governing law – Dispute resolution.** All disputes and differences arising out of this Agreement shall be settled by the Parties amicably by negotiation. If the Parties cannot come to terms, the Courts of Athens, Greece, are solely competent for the resolution of any dispute or difference arising in any way from or in connection with this Agreement. This agreement is governed by Greek law.

FAST GROUP SA
AIRFAST TICKETS
6 SKOUZE STREET
18536 PIRAEUS

BRITISH AIRWAYS PLC
18 PLOUTARCHOU STR.
10676 ATHENS

RON YEATMAN

FREDERIKI STIER

FAST GROUP S.A.
TRAVEL AGENCY
" air fast tickets "
6 SKOUZE STR., P.C. 18536 PIRAEUS
EL: 9979300078
TEL.: 0030 2144163600 - FAX: 0030 210 4535595
E-MAIL: info@airfasttickets.gr

BRITISH AIRWAYS PLC
ΒΡΕΤΤΑΝΙΚΕΣ ΑΕΡΟΓΡΑΜΜΕΣ
ΠΛΟΥΤΑΡΧΟΥ 18, ΑΘΗΝΑ 106 76
ΑΦΜ. 098002125 ΔΟΥ ΦΑΕ ΑΘΗΝΩΝ
ΤΗΛ.: 210 7400220 FAX: 210 7400242

DATE 1FEB2014

DATE 1FEB2014

2

# EXHIBIT 4

# Arent Fox

Arent Fox LLP / Attorneys at Law
Los Angeles, CA / Washington, DC / New York, NY
www.arentfox.com

December 11, 2015

VIA FEDEX AND EMAIL

Citibank, N.A.
CT Corporation System
111 Eighth Ave.
New York, NY 10011

Citibank, N.A.
Attn: Samira Abid
601 Lexington Ave., 17th Flr.
New York, NY 10022
samira.abid@citi.com

**Andy S. Kong**
Attorney
213.443.7554 DIRECT
213.629.7401 FAX
andy.kong@arentfox.com

**Reference Number**
037168.00000

Re:    In re AirFastTickets, Inc., Bankruptcy Case No. 15-11951
       Standby Letter of Credit No. 63667598 and Account No. 4967626896

Dear Ms. Abid:

By way of introduction, this law firm is general bankruptcy counsel to the above-captioned debtor-in-possession AirFastTickets, Inc. (the "Debtor"). The Debtor's chapter 11 bankruptcy case is pending in the United States Bankruptcy Court, Southern District of New York. We are informed that the Debtor's former Chief Executive Officer Nikolaos Koklonis used the Debtor's monies to post collateral and/or a bond in exchange for the issuance of the Irrevocable Standby Letter of Credit No. 63667598 (the "Letter of Credit") on behalf of the Debtor, naming British Airways, PLC as the beneficiary.

Pursuant to 11 U.S.C. § 541, the Letter of Credit and any funds you are holding as collateral for the Letter of Credit constitutes property of the Debtor's bankruptcy estate. This correspondence serves as a demand to immediately freeze any draw down or transfer from the Letter of Credit. The Debtor is in the process of investigating the Letter of Credit, Nikolaos Koklonis, and other related issues. Please confirm to us in writing on or before **December 18, 2015** that Citibank, N.A. has frozen the Letter of Credit until further notice from our office or the bankruptcy court.

Nothing in this letter should be construed as a waiver of any claims, all such rights being expressly reserved. Should you have any questions, do not hesitate to contact me. Thank you for your anticipated cooperation.

555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
T 213.629.7400   F 213.629.7401

1675 Broadway
New York, NY 10019-5820
T 212.484.3900   F 212.484.3990

55 Second Street, 21st Floor
San Francisco, CA 94105-3470
T 415.757.5500   F 415.757.5501

1717 K Street, NW
Washington, DC 20036-5342
T 202.857.6000   F 202.857.6395

**Arent Fox**

Sincerely,

Andy S. Kong

cc:        Aram Ordubegian, Esq.

# EXHIBIT 5

# Arent Fox

Arent Fox LLP / Attorneys at Law
Los Angeles, CA / Washington, DC / New York, NY
www.arentfox.com

December 16, 2015

VIA EMAIL

Citibank, N.A.
c/o Michael J. Venditto
Reed Smith LLP
MVenditto@ReedSmith.com

**Andy S. Kong**
Attorney
213.443.7554 DIRECT
213.629.7401 FAX
andy.kong@arentfox.com

**Reference Number**
037168.00000

Re:    In re AirFastTickets, Inc., Bankruptcy Case No. 15-11951
       Standby Letter of Credit No. 63667598 and Account No. 4967626896

Dear Mr. Venditto:

We are in receipt of your e-mail dated December 16, 2015.[1]  In your e-mail, you asked us to provide you with information and/or documents supporting the Debtor's assertion of an interest in the Account.  As you know, under section 541 of the Bankruptcy Code, all property in which a debtor has a legal or equitable interest at the time of bankruptcy comes into the estate.  Indeed, what constitutes a legal or equitable interest is broadly construed.  See In re Garrett, 225 B.R. 301 (Bankr. W.D. N.Y. 1998) (the Bankruptcy Code gives extremely broad definition to property of the estate).

That said, we are enclosing herewith relevant e-mail exchanges between Citibank and Nikolaos Koklonis as well as the Debtor's February 2013 bank statement.  Specifically, the February 26, 2013 e-mails between Citibank and Mr. Koklonis clearly indicate that Citibank suggested, and Mr. Koklonis ultimately agreed, to transfer $35,000 of the Debtor's funds to Mr. Koklonis' personal account to use as collateral for the Letter of Credit.  Indeed, the Debtor's February 2013 bank statement shows a withdrawal on February 26, 2013 in the amount of $35,000.

Again, please confirm to us in writing on or before **December 18, 2015** that Citibank, N.A. has frozen the Letter of Credit until further notice from our office or the bankruptcy court.  Nothing in this letter should be construed as a waiver of any claims, all such rights being expressly reserved.  Should you have any questions, do not hesitate to contact me.  Thank you for your anticipated cooperation.

---

[1] All capitalized terms used herein shall have the meaning ascribed to them in our letter to Citibank, N.A. dated December 11, 2015 unless otherwise defined.

AFDOCS/12768960.1

555 West Fifth Street, 48th Floor    1675 Broadway    55 Second Street, 21st Floor    1717 K Street, NW
Los Angeles, CA 90013-1065    New York, NY 10019-5820    San Francisco, CA 94105-3470    Washington, DC 20036-5342
T 213.629.7400  F 213.629.7401    T 212.484.3900  F 212.484.3990    T 415.757.5500  F 415.757.5501    T 202.857.6000  F 202.857.6395

Arent Fox

December 16, 2015
Page 2


Sincerely,

Andy S. Kong


cc:        Aram Ordubegian, Esq.

Enclosures

EXHIBIT 6

**Kong, Andy**

| | |
|---|---|
| **From:** | Venditto, Michael J. <MVenditto@ReedSmith.com> |
| **Sent:** | Thursday, December 17, 2015 2:08 PM |
| **To:** | Kong, Andy |
| **Subject:** | In re AirFastTickets, Inc., Bankruptcy Case No. 15-11951 |

Thank you for your correspondence replying to my email. I have reviewed the correspondence as well as the accompanying documentation.

You have directed our attention to an accompanying bank statement which evidences a withdrawal in the amount of $35,000 from the Airfast bank account on February 26, 2013.

While this transaction might be consistent with the use of Airfast funds to secure the letter of credit, it could also evidence other scenarios.

I have received telephone calls from both Mr. Koklonis and his counsel demanding that the funds in the account be made available to him since he is the owner of the account. Mr. Koklonis insists that the funds in that account are his personal assets.

It is clear that the account was opened in the name of Mr. Koklonis. It is possible that the February 26 withdrawal was made to transfer funds to Mr. Koklonis. However, at this point Citibank is not in a position to determine whether the Debtor or Mr. Koklonis owned the funds that were deposited into the Citibank account to collateralize the letter of credit.

Mr. Koklonis and his counsel have promised to forward documentation supporting his contention that the funds deposited in the account were his personal assets. While we await his submission we invite you to provide any additional documentation you may have to support the Debtor's assertion.

Meanwhile I can confirm that, in light of the issues raised by your correspondence, the bank has placed an administrative hold on Account No. 4967626896 to prevent a transfer or withdrawal of the funds while this matter is reviewed.

**Michael J. Venditto**
+1 212.205.6081
mvenditto@reedsmith.com

**ReedSmith**LLP | 599 Lexington Avenue | New York, NY 10022 |Fax 212.521.5450

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

# EXHIBIT 7



**Michael J. Venditto**
Direct Phone:  +1 212 205 6081
Email:  mvenditto@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
Tel +1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

March 10, 2016

**Via Email (sevan.gorginian@arentfox.com)**

Sevan Gorginian
Associate
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, California  90013

**In re AirFastTickets, Inc., Debtor.  Bankruptcy Case No. 15-11951**

Dear Sevan:

I am following up on our telephone conversations of last Friday and Monday of this week regarding the above-referenced Chapter 11 case.

As you know, last December, following receipt of correspondence from your firm in its capacity as counsel for the above-referenced Debtor, Citibank placed an internal hold on a certificate of deposit held in the name of Mr. Nikolaos Koklonis.  This was done as a consequence of competing ownership claims to the account asserted by the Debtor and Mr. Koklonis.  Although the account was not in the Debtor's name, the Debtor had asserted that the funds were property of its bankruptcy estate and, therefore, subject to the automatic stay of 11 U.S.C. § 362(a).  Mr. Koklonis and his counsel disputed this assertion, but the Debtor indicated that it would commence litigation to obtain a determination of these competing claims.

To date, we are not aware that such litigation has been commenced.

Mr. Koklonis has recently been able to access funds in his account and has demanded that he be given access to the remaining funds.  Since there has not been any action to seek a judicial determination of the Debtor's claim, it is impractical for Citibank to continue holding the funds indefinitely.  Unless, prior to 5 pm on Monday, March 14, 2016, Citibank receives notice that the Bankruptcy Court has assumed jurisdiction over the funds, Citibank may release its internal hold and decide to whom, and under what conditions, the funds should be disbursed.

Very truly yours,

Michael J. Venditto

7